IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RYAN MATTHEW RESOP, | : |
| Plaintiff, | : |
| v. | : Civ. No. 15-626-LPS |
| ANTHONY A. FIGLIOLA, et al., | : |
| Defendants. | : |

Ryan Matthew Resop, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

**MEMORANDUM OPINION**

October 23, 2015
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff Ryan Matthew Resop ("Plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983. (D.I. 3) He has also filed a motion for injunctive relief. (D.I. 8) Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 5) The Court proceeds to review and screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(b) and § 1915A(a).

## II. BACKGROUND

In 2007, Plaintiff pled guilty to multiple criminal offenses, including three counts of robbery in the first degree. *See Matter of Petition of Resop*, 2015 WL 5168155 (Del. Sept. 1, 2015). In 2009, Plaintiff's codefendant, Jarrell Crawley ("Crawley"), filed a motion for postconviction relief alleging ineffective assistance of his trial counsel and, in a response, Crawley's trial counsel -- Defendant Anthony A. Figliola ("Figliola") -- filed an affidavit that included a statement that Plaintiff had pled guilty and had agreed to testify against Crawley at trial. *See id.* at *1.

In 2015, Plaintiff sought an extraordinary writ of mandamus in the Delaware state courts, contending that the statement about him in the affidavit was false, adding that he specifically rejected the State's first plea offer because he would not agree to testify against Crawley. *See id.* Plaintiff contends that, as a result of Figliola's false statement -- which is included in documents that are available on Westlaw -- he has been labeled a "snitch" by other inmates. *See id.* Plaintiff alleged that he was assaulted by other inmates and that the Delaware Department of Correction ("DOC") will not allow him to move into the general population or participate in the Key Program. *See id.* Plaintiff requested issuance of a writ of mandamus directing the DOC to allow him entry into the Key Program, directing the Office of Disciplinary Counsel ("ODC") to pursue disciplinary sanctions

1

against Figliola, and directing Figliola to retract the false statements. *See id.* The Delaware Supreme Court dismissed the petition for a writ of mandamus on the grounds that it did not have original jurisdiction to issue a writ of mandamus directed to the DOC, the ODC, or to counsel. *See id.*

Plaintiff's Complaint contains allegations similar to those raised in his petition for a writ of mandamus. (D.I. 3) Named as Defendants are Figliola, Delaware Deputy Attorney General Gregory E. Smith ("Smith"), Thomson Reuters ("Thomson Reuters") (the parent company of WestlawNext ("Westlaw")), and correctional officers Sgt. Angelina DeAllie ("DeAllie") and Abigail E. West ("West"). Defendants are sued in their individual and official capacities.

The Complaint alleges as follows. Plaintiff and Crawley were criminally charged in 2007. Plaintiff entered a guilty plea and Crawley went to trial. Plaintiff rejected the first plea offer because it was conditioned on his agreement to testify against Crawley. (*See* D.I. 3 Ex. F) According to Plaintiff, his refusal to testify against Crawley resulted in three additional years to his sentence. In June 2009, Crawley filed a motion for post-conviction relief alleging ineffective assistance of counsel. Plaintiff alleges that Figliola's affidavit to the Delaware Superior Court falsely stated that Plaintiff had agreed to testify truthfully at Crawley's trial if called, that Figliola met with Plaintiff and Plaintiff's criminal attorney, and that Plaintiff would provide testimony implicating Crawley in the criminal acts with which he was charged. Smith filed an opposition for the State and referred to Figliola's affidavit and a Report and Recommendation, both of which stated that Plaintiff was willing to testify against Crawley. Plaintiff alleges that inmates at the VCC are allowed to order case law and have access to the Delaware Supreme Court's decision that found no merit to Crawley's motion for postconviction relief, *Crawley v. State*, 2010 WL 3036740 (Del. Aug. 10, 2010). The decision states that Figliola "stated that he believed aggressive cross-examination of the victim on that subject could backfire and lead to the State's calling Ryan Resop to testify concerning Crawley's involvement in

2

the crimes." *Id.* at *2. Plaintiff alleges that, because of the decision, the false statements, and reports, he has been labeled a snitch by the prison population, his life is in danger, and he is "in jeopardy of assaults by other inmates 24/7." (D.I. 3 at 14) Plaintiff alleges that inmates wrote "Resop is a rat" on prison walls, doors, and showers, and engraved "Crawley v. State" on hundreds of food trays that are handed out three-times daily. Plaintiff alleges that Crawley, who is also housed at the VCC, hands out copies of the false statements to stop others from associating with Plaintiff or to encourage them to assault him.[1]

Plaintiff alleges that Crawley showed DeAllie and West the reports written by Figliola and they spread rumors among the inmates that Plaintiff was a snitch. Plaintiff alleges that on two or three occasions DeAllie and West brought copies of Figliola's report to show inmates that "Resop is a rat." (D.I. 3 at 87) Plaintiff alleges that DeAllie and West knew that once the reports were in gangs' hands and the information spread, Plaintiff would be beaten. Plaintiff alleges that West came onto the tier and yelled that "Resop is a rat," "nobody fool with him," "he will take a plea to testify on you." (*Id.* at 87) Plaintiff alleges that he was assaulted by his cellmate, that other inmates threatened him with physical violence, and there were many rumors that inmates intended to attack him.

The Complaint refers to several altercations. Plaintiff alleges that in August 2009, his cellmate told him he had been informed that Plaintiff was a State witness and a snitch. Plaintiff told DOC personnel, and he was transferred to another cell on August 27, 2009. On September 3, 2009, Plaintiff was in his cell and was attacked by six inmates. In October/November 2011, Plaintiff was assaulted with a broomstick. In January 2012, Plaintiff was told that if he returned to the tier he

---

[1] Exhibit D is a letter written by Figliola to Crawley advising Crawley that an offer was made to Plaintiff to testify against Crawley, but that Plaintiff did not testify against him.

3

would be attacked, so Plaintiff intentionally engaged in misconduct to receive a disciplinary report and be moved to isolation. In August 2012, Plaintiff was assaulted with feces and urine. In 2013, Plaintiff was involved in three fights but was forced to say one of the fights was horse play. (D.I. 3 at 97-99)

Plaintiff alleges that on June 11, 2014, he was attacked and beaten by his cellmate, who had read Defendants' false statements. (*See id.* at Ex. J) He alleges this was the third assault on record, in addition to seven attacks not of record and four notes to officials requesting a transfer from the tier. (D.I. 3 at 91) Plaintiff alleges that he was told by his cellmate the reason for the attack was that Plaintiff was a rat and had to die. (*Id.* at 92) Following the attack, Plaintiff was taken to medical and then escorted to a classroom. (*Id.*) He heard DeAllie laughing outside the classroom, saying "I made that happened" and then she opened the door and said, "that's what you get rat, you got what you deserve, I told you I have pull around here." (*Id.* at 93) Plaintiff was sent to isolation. When he returned to his unit he was placed in a double cell, but his cellmates told him he was not welcome because he was a State witness. Plaintiff was moved to a single cell on June 16, 2014. There, feces and urine were thrown under his door. Plaintiff alleges that the conduct of DeAllie and West was intended to label him as an informant to provoke more attacks against him by other inmates.

In April 2015, Crawley was moved onto Plaintiff's tier and handed Figliola's and Smith's reports to the entire tier. (D.I. 3 at 100) After Plaintiff complained, Crawley was moved off the tier. On May 19, 2015, Plaintiff was moved to a double cell. He alleges that West told the entire tier that Plaintiff is a rat and "nobody deal with him." (D.I. 3 at 100) Plaintiff alleges that it is only a matter of time before he is attacked again.

Plaintiff alleges that Figliola is responsible for the attacks and beatings by providing false statements and violating the rules of professional conduct. Plaintiff alleges that Smith violated

4

Plaintiff's due process rights because he referred to Figliola's statements in court filings and knew or should have known that the statements were false and, further, that Smith is responsible for the false reports that were published. Plaintiff alleges that Figliola and Smith conspired to cause Plaintiff harm. He alleges that Thomson Reuters posted false reports. He also alleges that DeAllie and West falsely labeled him a rat and an informant, causing the beatings by other inmates. He also alleges that this resulted in an assignment to segregated housing. Also, he alleges that DeAllie and West conspired to cause him harm. Plaintiff alleges that he would not be housed in the Security Housing Unit ("SHU") had he not been assaulted and labeled a State witness. He also alleges that his housing assignment caused him to lose opportunities to participate in programs and earn good time credits.

Plaintiff attempts to raise claims of: (1) retaliation;[2] (2) a due process violation of his protected liberty interest in his reputation; (3) equal protection for "affecting federal proceedings that are supposed to be fair"; (4) a due process violation for "affecting federal/state proceedings that are supposed to be fair"; (5) attorney misconduct; (6) defamation; (7) First Amendment violations; (8) libel and slander; (9) failure to protect; (10) intentional infliction of emotional distress; and (11) conspiracy.[3]

---

[2] Proof of a retaliation claim requires Plaintiff to demonstrate that: (1) he engaged in protected activity; (2) he was subjected to adverse actions by a State actor; and (3) the protected activity was a substantial motivating factor in the State actor's decision to take adverse action. *See Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The Complaint does not contain facts to support retaliation claims and, therefore, the claims will be dismissed as frivolous.

[3] To state a conspiracy claim under § 1983, Plaintiff must show that "persons acting under color of state law conspired to deprive him of a federally protected right." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999). In addition, there must be evidence of actions taken in concert by Defendants with the specific intent to violate that right. *See Williams v. Fedor*, 69 F. Supp. 2d 649, 665-66 (M.D. Pa.), *aff'd*, 211 F.3d 1263 (3d Cir. 2000). The Complaint does not contain facts to support conspiracy claims and, therefore, the claims will be dismissed as frivolous.

Plaintiff seeks compensatory and punitive damages as well as declaratory and injunctive relief in the form of a transfer to a different correctional facility and an order directing the cessation of harassment.

## III. LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to

§ 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In addition, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, __U.S.__, 135 S.Ct. 346, 347 (2014); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See Johnson*, 135 S.Ct. at 346.

To determine whether a complaint meets the pleading standard as set forth in *Twombly* and *Iqbal*, the Court must: (1) outline the elements a plaintiff must plead to a state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; and (3) look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (internal citations omitted) (citing *Iqbal*, 556 U.S. at 679; *Argueta v. United States*

*Immigration and Customs Enforcement*, 643 F.3d 60, 73 (3d Cir. 2011)). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV. DISCUSSION

### A. State Actors

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). To act under "color of state law," a defendant must be "clothed with the authority of state law." *West*, 487 U.S. at 49.

Plaintiff has named Figliola and Thomson Reuters as Defendants. Figliola is a private attorney who represented Plaintiff's co-defendant in a criminal matter. Thomson Reuters is a corporation and the parent company of Westlaw, which published a decision by the Delaware Supreme Court that Plaintiff believes defames him. Neither Defendant is a State actor. In addition, Thomson Reuters is not a person within the meaning of § 1983 and, therefore, is not a proper defendant.[4] See *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 69 (1989); *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). Figliola and Thomson Reuters are not "clothed with the authority of state law." See *Reichley v. Pennsylvania Dep't of Agric.*, 427 F.3d 236, 244-45 (3d Cir. 2005); *Biener v. Calio*, 361 F.3d 206, 216-17 (3d Cir. 2004).

---

[4] There are no allegations in the Complaint directed towards Thomson Reuters other than describing it as the publisher of Westlaw.

In addition, Figliola was acting in his capacity as an attorney when he authored the filings Plaintiff contends contain false statements. In Delaware, the absolute privilege attaches to all statements made as part of judicial proceedings. *See Nix v. Sawyer*, 466 A.2d 407, 410 (Del. Super. 1983). The privilege is not confined to events inside a courtroom and extends to all communications relating to the litigation, including communications with witnesses and the drafting and filing of pleadings. *See id.* at 410-11. "[T]he interest in encouraging a litigant's unqualified candor as it facilitates the search for truth is deemed so compelling that the privilege attaches even where the statements are offered maliciously or with knowledge of their falsity." *Barker v. Huang*, 610 A.2d 1341, 1345 (Del.1992) (quoting *Nix*, 466 A.2d at 411). The absolute privilege bars all of Plaintiff's claims based on pleadings filed, statements made, and actions taken by Figliola in the course of judicial proceedings.

Therefore, the Court will dismiss the claims against Figliola and Thomson Reuters as legally frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### B. Prosecutorial Immunity

Plaintiff alleges that Smith prepared false reports which defamed him. The report described by Plaintiff is actually the State of Delaware's answering brief prepared by Smith in opposition to Crawley's appeal of the denial of his motion for postconviction relief.

Prosecutors are not to be encumbered by the threat of civil liability while performing judicial or quasi-judicial functions. *See Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008). Prosecutors are absolutely immune from § 1983 liability for acts performed in the course of their function as advocates for the state. *See Yarris v. County of Delaware*, 465 F.3d 129, 135-36 (3d Cir. 2006). Absolute immunity attaches to acts "intimately associated with the judicial phase of the criminal process," including "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*,

424 U.S. 409, 430-31 (1976). Qualified immunity is generally afforded to "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). To determine what level of immunity applies, a "court must ascertain just what conduct forms the basis for the plaintiff's cause of action, and it must then determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011). "Although by no means dispositive, . . . the period during which prosecutors are most likely functioning [as advocates] . . . is the time between indictment and dismissal, acquittal, or conviction." *Odd*, 538 F.3d at 211.

A prosecutor's conduct in responding to a motion for post-conviction relief may not be protected by absolute immunity, *see Peterson v. Bernadi*, 719 F. Supp. 2d 419, 436 (D.N.J. 2010), given that the prosecutor's actions may fall under the realm of administrative conduct. Here, however, even if Smith is not entitled to absolute immunity, his conduct in representing the State on appeal at least falls within the scope of administrative duties. Nothing suggests his conduct was objectively unreasonable and, therefore, the Court concludes that qualified immunity attaches to his actions. Finally, like with respect to Figliola, the absolute privilege bars all of Plaintiff's claims against Smith (including defamation and libel) that are based upon pleadings filed, statements made, and actions taken by Smith in the course of judicial proceedings.

Therefore, the Court will dismiss the claims against Smith, as he is immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) and § 1915A(b)(2).

### C. Security Housing Unit Claims

In the body of the Complaint, Plaintiff alleges that, were he not housed in SHU, he would be housed in the special unit or in general population. It is not clear from the allegations if Plaintiff

10

remains housed in SHU. Nor is it clear if Plaintiff seeks to raise an Eighth Amendment conditions of confinement claim, a due process claim, or both.

Plaintiff complains that the conditions of confinement in SHU are severe and that he is confined to his cell for the majority of time. He alleges that segregation is not intended as permanent housing and lasts only as long as necessary. Plaintiff makes reference to the procedures used when removing him from his cell, strip searches upon reentry to his cell, restrictions on personal visits, telephone calls, radio, television, limited opportunities for personal hygiene, limited exercise, denial of visits to the law library (although Plaintiff acknowledges that inmates may request legal materials be brought to their cells), drawing materials, certain personal hygiene items, certain food items, ant and spider infestation, noise, and bright lights. (D.I. 3 at 67-70, 73-74, 78) Plaintiff alleges that while housed in SHU he suffered from depression, anxiety, insomnia, and anorexia.

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

Although the conditions in SHU may be harsher than those in general population security, they do not constitute a denial of "the minimal civilized measures of life's necessities." *See, e.g., Williams v. Delo*, 49 F.3d 442, 444-47 (8th Cir. 1995) (holding no Eighth Amendment violation where

prisoner was placed in strip cell without clothes, water in cell was turned off and mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld). In addition, while Plaintiff complains of the condition in SHU, he has named no specific individual, nor has he alleged that prison officials knew of, and disregarded, an excessive risk to his health or safety. *See Beers-Capitol*, 256 F.3d at 125. Therefore, the Court will dismiss the conditions of confinement claim as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

Procedural due process rights are triggered by deprivation of a legally cognizable liberty interest. In a prison setting, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In determining whether a protected liberty interest exists, the Court considers: (1) the duration of the disciplinary confinement; and (2) the conditions of that confinement in relation to other prison conditions. *See id.* Reflecting the fact-specific nature of this test, cases engaging in this inquiry have reached differing outcomes. *Compare Leamer v. Fauver*, 288 F.3d 532, 545 (3d Cir. 2002) (denial of right to participate in sex offender treatment program that was "mandated and promised" by New Jersey law implicated protected liberty interest), and *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (eight years in administrative confinement, during which inmate was locked in his cell for all but two hours per week, denied contact with his family, and prohibited from visiting library or "participating in any education, vocational, or other organization activities," implicated protected liberty interest), with *Smith v. Mensinger*, 293 F.3d 641, 645, 654 (3d Cir. 2002) (seven months in disciplinary confinement did not implicate liberty interest), *Torres v. Fauver*, 292 F.3d 141, 151-52 (3d Cir. 2002) (disciplinary detention for fifteen days and administrative segregation for 120 days was not atypical treatment in New Jersey prisons and therefore did not implicate protected liberty interest), and *Griffin v. Vaughn*, 112 F.3d 703, 706-09 (3d Cir. 1997)

12

(administrative detention, which imposed strict restrictions on outside contact and personal conveniences, did not implicate protected liberty interest).

Similar to the Eighth Amendment claim, Plaintiff did not name a specific individual who allegedly violated his right to due process. Nor is it clear from the allegations how long Plaintiff was housed in SHU, if he remains housed in SHU, or if his housing assignment was based upon safety factors or for disciplinary reasons. As currently pled, Plaintiff has failed to state a due process claim upon which relief may be granted. Therefore, the Court will dismiss the claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). However, since it appears plausible that Plaintiff may be able to articulate a claim against one or more Defendants (or name alternative defendants), he will be given an opportunity to amend the due process claim.

### D. Failure to Protect

Plaintiff alleges that DeAllie and West spread rumors among the inmates that he was a State witness, knowing that Plaintiff would be attacked when the prison population heard the rumors and, indeed, he was attacked. Exhibits provided by Plaintiff indicate that many of the altercations occurred during a time-frame barred by the applicable statute of limitation period, but at least one incident, and perhaps two, are not time-barred.[5]

To plead an Eighth Amendment failure-to-protect claim, a plaintiff must plead facts raising a reasonable inference of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation. *See Hamilton v. Leavy*, 117 F.3d 742, 747 (3d Cir. 1997). Under the "deliberate indifference" standard, a prison official may be liable under the Eighth

---

[5]"Limitations periods in § 1983 suits are to be determined by reference to the appropriate 'state statute of limitations and the coordinate tolling rules.'" *Hardin v. Straub*, 490 U.S. 536, 541 (1989) (citing *Board of Regents, University of New York v. Tomanio*, 446 U.S. 478, 484 (1980)). The relevant state statute of limitations for a personal injury action in Delaware is two years. *See* 10 Del. C. § 8119.

13

Amendment for exposing an inmate to a substantial risk of serious harm, if the official knows of the risk and disregards the risk by failing to take reasonable steps to abate it. *See Farmer*, 511 U.S. at 847.

This Court has recognized the serious implications of being labeled a "snitch" in prison. *See Blizzard v. Hastings*, 886 F. Supp. 405, 410 (D. Del. 1995) (being labeled snitch "can put a prisoner at risk of being injured"). Labels can lead to a substantial risk of serious harm to the prisoner. *See generally Renchenski v. Williams*, 622 F.3d 315, 326 (3d Cir. 2010) (stating that "[i]t is largely without question . . . that the sex offender label severely stigmatizes an individual, and that a prisoner labeled as a sex offender faces unique challenges in the prison environment," citing studies which support the proposition that inmate norms call for savage beating of sex offenders). As such, the Court concludes that Plaintiff has stated a claim upon which relief can be granted. *See Benefield v. McDowell*, 241 F.3d 1267 (10th Cir. 2001) (finding inmate allegations that officer labeled him a snitch in front of other inmates stated a claim under Eighth Amendment, despite no allegation of actual assault). Therefore, Plaintiff will be allowed to proceed with his claims against DeAllie and West.

## V.     MOTION FOR INJUNCIVE RELIEF

Plaintiff seeks injunctive relief in the form of a transfer from the VCC to the Howard R. Young Correctional Institution in Wilmington, Delaware. (D.I. 8) Plaintiff states that he is in danger as a result of the dissemination of false documents and information. Exhibits attached to the motion indicate that Plaintiff was involved in altercations on September 3, 2009, April 9, 2010, March 29, 2013, and June 11, 2014.

"A preliminary injunction is an extraordinary remedy that should be granted only if: (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and

14

(4) granting the injunction is in the public interest." *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999). "[A]n injunction may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights." *Continental Group, Inc. v. Amoco Chem. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (quoting *Holiday Inns of Am., Inc. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969)). "The relevant inquiry is whether the movant is in danger of suffering irreparable harm at the time the preliminary injunction is to be issued." *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1264 (3d Cir. 1985). Because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution. *See Abraham v. Danberg*, 322 F. App'x 169, 170 (3d Cir. Apr. 24, 2009) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).

Given the exhibits submitted to the Court, Plaintiff has not demonstrated the likelihood of success on the merits or demonstrated irreparable harm to justify injunctive relief. Notably, while Plaintiff is fearful of an altercation, exhibits provided to the Court indicate that no incidents have occurred since June 2014, more than a year ago. In addition, the Court has no authority to dictate Plaintiff's housing and/or prison assignment. The Delaware Supreme Court has recognized that prison officials have discretion to house inmates at the facilities they choose. *See Walls v. Taylor*, 856 A.2d 1067, 2004 WL 906550 (Del. 2004) (table) (citing *Brathwaite v. State*, No. 169, 2003 (Del. Dec. 29, 2003)). Therefore, the Court will deny the motion. (D.I. 8)

## VI. CONCLUSION

For the above reasons: (1) the Court will deny Plaintiff's motion for injunctive relief (D.I. 8); (2) Plaintiff will be allowed to proceed with his failure to protect claims against DeAllie and West; and (3) the Court will dismiss Defendants Figliola, Smith, and Thomson Reuters, and all remaining claims as legally frivolous, for failure to state a claim upon which relief may be granted, and as

immune from suit pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i), (ii), and (iii) and §§ 1915A(b)(1) and (2). Plaintiff will be given leave to amend the Security Housing Unit due process claim.

An appropriate Order will be entered.